Filed 5/17/21  P. v. Zavala CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073912 |
| v. | (Super. Ct. No. MBCRF1963917) |
| ARMANDO ZAVALA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Inyo County.  Richard F. Toohey, Judge. Affirmed in part, reversed in part.

Rex A. Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

A jury convicted defendant and appellant, Armando Zavala, of two counts of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); counts 1 & 2) and two counts of making a criminal threat (§ 422, subd. (a); counts 3 & 4). The jury found not true the allegation that defendant caused one of the victims great bodily injury. The trial court found true that defendant had a prior strike conviction (§ 667, subds. (b)-(i)), and sentenced defendant to seven years in prison.

On appeal, defendant contends (1) one of his convictions for assault with a deadly weapon was not supported by substantial evidence, (2) the trial court prejudicially erred by instructing the jury that a deadly weapon is an inherently deadly weapon, (3) there is insufficient evidence that he threatened one of the victims, and (4) his concurrent sentences for making criminal threats must be stayed under section 654 because the offenses were part of the same course of conduct.

We conclude substantial evidence supports defendant's conviction on count 2 for assault with a deadly weapon. The People concede, and we agree, that the trial court's instruction about inherently deadly weapons was erroneous. We also conclude the error was prejudicial as to count 2 and therefore reverse defendant's conviction on count 2. We also agree there is insufficient evidence that defendant criminally threatened one of

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

the victims and therefore reverse count 4.  Finally, we reject defendant's argument that his remaining valid convictions must be stayed under section 654.

II.

FACTS

Defendant started a physical altercation with his acquaintances, Phillip, Justin, and Phillip's fiancée, Kaytlyn.  He knocked a drink out of Phillip's hand and punched him. Justin put defendant in a headlock and wrestled him to the ground, which ended the incident.

Shortly afterward, around dusk, Phillip, Kaytlyn, and Justin walked to a canal to help a homeless man move his belongings.  Justin and Phillip were talking while walking alongside the canal ahead of Kaytlyn as they rounded a "curve."  Kaytlyn saw defendant "standing there like all bulked up a little" in the bushes next to the canal and gave defendant "a what's-up type of head nudge" while looking at him.  Defendant nodded back.  Defendant was about 20 to 30 feet away.

Kaytlyn then saw "something sharp slide down [defendant's] wrist from [his] sleeve," and said to Phillip and Justin, "'You guys, he's got a knife.'"  Kaytlyn testified that she was not sure if the sharp object was a knife because it was starting to get dark and could not tell what it was, but she saw "something sharp pointing."  Phillip testified that the object was "a common hunting knife or something" that was four to six inches long.  Justin could not tell what the object was because he has poor eyesight.

3

Defendant then ran toward the group, although Kaytlyn did not see him coming. Justin described defendant as "mad" and "saying stuff." Justin did not know exactly what defendant said, although he heard defendant "aggressively" say something like, "'I'm going to stab someone'" while holding the knife up. Defendant made several stabbing motions while running at the group. Justin thought defendant was "coming at" Kaytlyn because she was the closest to him. Phillip testified that he recalled defendant yelling something, but he could not recall what defendant said. However, Phillip told law enforcement shortly after the incident that defendant said something along the lines of, "'[y]ou've messed up and you're going to die.'" Kaytlyn testified that she did not "remember [defendant] saying anything."

Phillip immediately pushed Kaytlyn out of the way and got in between her and defendant. Phillip put his arms in the air and said, "'If you're going to stab someone, you stab me.'" Defendant stabbed Phillip twice in the abdomen while his hands were still in the air, but unsuccessfully tried to stab him two more times.

Defendant turned around and ran away. Kaytlyn and Justin chased after him. Kaytlyn hit defendant with a strap that she used as a dog leash, and Justin hit him with a tree branch.

Kaytlyn then returned to Phillip. He was bleeding, so she called 911. After seeing Phillip's wounds, Kaytlyn concluded defendant used "a screwdriver or something" to stab Phillip because his wounds "were more round and slits."

4

Phillip suffered two stab wounds, but his injuries were not life-threatening. One of his wounds had to be stapled shut. The wound was close to Phillip's heart and hit his rib cage, which is "why it didn't go so deep." Because of his injuries, Phillip could not use much of the left side of his body for about a week.

Law enforcement searched defendant's tent near the crime scene, where they recovered two knives and a pair of shears. None of the objects had blood on them. The object defendant used to stab Phillip was never found.

III.

DISCUSSION

A. *Substantial Evidence Supports Defendant's Conviction for Assaulting Kaytlyn With a Deadly Weapon*

Defendant contends there was insufficient evidence that he assaulted Kaytlyn with a deadly weapon.{AOB 10} We disagree.

1. *Standard of Review*

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings,

5

reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  A reviewing court neither reweighs evidence nor reevaluates a witness's credibility."  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.  If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'"  (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)  We may reverse a conviction for a lack of substantial evidence only if it appears ""'that upon no hypothesis whatever is there sufficient substantial evidence""'" to support the conviction.  (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

2.  *Analysis*

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (§ 240.)  "For purposes of assault with a deadly weapon under section 245(a)(1), 'a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury."  [Citation.]'"  (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 85 (*Raymundo M.*).)

6

Defendant contends he did not assault Kaytlyn or use a deadly weapon to do so.{AOB 11}  He argues there was insufficient evidence that he assaulted Kaytlyn because "[a]t best, the evidence showed he approached her and the rest of the group."{AOB 13}  In defendant's view, there was "no evidence" he ran toward Kaytlyn, no evidence about how fast he moved, nor any evidence about how far away he was.{AOB 13}

The record shows otherwise.  Phillip and Justin testified that defendant ran toward the group, and Kaytlyn was nearest to him.  Justin testified that defendant was "coming at her"{2RT 256} from about 20 to 30 feet away.{2RT 266}  Phillip and Justin testified that defendant ran at the group while yelling aggressively.  Phillip testified that defendant was holding a knife, and Justin testified that defendant ran at the group while holding up a sharp object, making stabbing motions, and yelling that he was going to stab someone.  Kaytlyn testified that she saw defendant holding a sharp object and that Phillip pushed her out of the way to get between her and defendant as he ran toward the group.  Because of the stab wounds defendant inflicted on Phillip, Kaytlyn immediately summoned medical attention for Phillip.  One of Phillip's wounds had to be stapled shut, and he could not use the left side of his body without pain for about a week.  Viewing the evidence in the light most favorable to the judgment, the record thus shows that defendant ran at Kaytlyn from about 20 to 30 feet away while holding up a sharp object that he used to stab Phillip twice in the abdomen, causing him serious injuries.

7

From this evidence, the jury could reasonably conclude that defendant assaulted Kaytlyn with a deadly weapon. *Raymundo M.*, *supra*, 52 Cal.App.5th 78 is instructive. There, the juvenile "raised the knife from waist-high to head-high, indicating he intended to use it in an offensive manner. Then, rather than merely brandish the knife while standing still, [the juvenile] lunged and ran toward [the victim] from 10 to 12 feet away." (*Raymundo M.*, *supra*, at pp. 87-88.) The victim ran away, and the juvenile unsuccessfully chased him. (*Ibid.*)

The Court of Appeal held there was substantial evidence that the juvenile committed assault with a deadly weapon. (*Raymundo M.*, *supra*, 52 Cal.App.5th at p. 88.) The court reasoned that the "evidence support[ed] the reasonable finding that, but for [the victim] fleeing in fear for his life, [the juvenile] actually used the knife in a way capable of producing, and likely to produce, death or great bodily injury—that is, as a deadly weapon." (*Ibid.*)

In reaching this conclusion, the *Raymundo M.* court relied on *People v. Yslas* (1865) 27 Cal. 630 (*Yslas*). In *Yslas*, the defendant approached the victim from about seven or eight feet away with a raised hatchet, but the victim ran to the next room and locked the door. (*Id.* at p. 634.) The *Yslas* court held that the defendant committed assault, even though he did not close the distance between himself and the victim or swing the hatchet. (*Ibid.*) The court rejected the defendant's argument that he did not commit assault because he did not get near the victim: "It is not indispensable to the commission of an assault that the assailant should be at any time within striking distance.

8

If he is advancing with intent to strike his adversary and come sufficiently near to induce a man of ordinary firmness to believe, in view of all the circumstances, that he will instantly receive a blow unless he strike in self-defense or retreat, the assault is complete. In such a case the attempt has been made coupled with a present ability to commit a violent injury within the meaning of the statute. It cannot be said that the ability to do the act threatened is wanting because the act was in some manner prevented." (*Ibid.*)

Like the defendant in *Yslas*, the juvenile in *Raymundo M.* approached the victim with a raised weapon from a short distance away and, like the victim in *Yslas*, the victim in *Raymundo M.* escaped injury only by retreating. (*Raymundo M.*, *supra*, 52 Cal.App.5th at p. 88.) In both cases, the courts held that the perpetrator committed assault with a deadly weapon even though neither of them got near their victims or swung a weapon at the victims. (*Ibid.*; *Yslas*, *supra*, 27 Cal. at p. 634.)

*Yslas* and *Raymundo M.* are consistent with the principle our Supreme Court recently stated: "[A]n aggressor should not receive the benefit of a potential victim fortuitously taking a defensive measure or being removed from harm's way once an assault is already underway." (*In re B.M.* (2018) 6 Cal.5th 528, 537.) Like the assailants in *Yslas* and *Raymundo M.*, defendant ran at Kaytlyn while holding a sharp object in the air and making stabbing motions from a relatively close distance. He then stabbed Phillip twice in the abdomen, which caused him to bleed such that Kaytlyn immediately called 911 for medical assistance for Phillip. Defendant presumably did not stab Kaytlyn only because Phillip pushed her out of the way, got in between her and defendant, and

9

confronted him. From this evidence, the jury reasonably concluded that defendant assaulted Kaytlyn, even if defendant did not get near her or try to stab her. (See *Raymundo M.*, *supra*, 52 Cal.App.5th at p. 90 ["[S]ubstantial evidence supports the juvenile court's factual finding that, by lunging and running toward [the victim] with a raised switchblade-like knife from a distance of 10 to 12 feet away, [the juvenile] used the knife in a manner that likely would have caused great bodily injury to [the victim] had [the victim] not taken evasive actions"]; see also *People v. Chance* (2008) 44 Cal.4th 1164, 1173 ["[A]n assault may occur even when the infliction of injury is prevented by environmental conditions or by steps taken by victims to protect themselves"]; *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1168 ["[A] jury could reasonably conclude that the [victim] would likely have been touched with the knife had he not moved out of the way"].)

The jury also could have reasonably found that defendant assaulted Kaytlyn with a deadly weapon. A weapon is deadly if it is inherently deadly or used in a manner capable of producing and likely to produce death or great bodily injury. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.)

The People do not contend the object defendant used was inherently deadly, but argue that he used it in a manner that was capable and likely to produce death or great bodily injury. We agree. The object defendant stabbed Phillip with twice in the abdomen left him bleeding from injuries that were serious enough that Kaytlyn immediately called 911. One of his wounds, which was near his heart, had to be stapled

10

shut. Because of his injuries, Phillip could not use most of the left side of his body without pain for about a week. Although Kaytlyn and Justin were unsure what the object was, Phillip testified that it was a four- to six-inch-long knife.

The evidence thus supports the reasonable inference that but for Phillip's actions, defendant "actually used the [object] in a way capable of producing, and likely to produce, death or great bodily injury [to Kaytlyn]—that is, as a deadly weapon." (See *Raymundo M.*, *supra*, 52 Cal.App.5th at p. 88.) Accordingly, substantial evidence supports the jury's finding that defendant assaulted Kaytlyn with a deadly weapon. (See *ibid.*; accord, *People v. Nguyen* (2017) 12 Cal.App.5th 44, 48 [defendant, who pointed knife at police officers and took a step toward them from 10 to 15 feet away before they shot him, was liable for assault with a deadly weapon on peace officer]; *People v. Bernal*, *supra*, 42 Cal.App.5th at p. 1164 [defendant guilty of assault with a deadly weapon for displaying knife, asking victim "'Do you want to do this?,'" and running away]; *People v. Vorbach* (1984) 151 Cal.App.3d 425, 429 [brandishing knife in a threatening manner is sufficient evidence of assault with a deadly weapon].)

B. *The Trial Court's Instructional Error Was Prejudicial*

The trial court instructed the jury with CALCRIM No. 875, which defined a deadly weapon as "any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." Defendant argues, the People concede, and we agree that the trial court erroneously instructed the jury because the object defendant used was not inherently

11

deadly. (See *People v. Aledamat* (2019) 8 Cal.5th 1 (*Aledamat*) [holding trial court errs by instructing jury on inherently deadly weapons unless the weapon used in the assault was inherently deadly, and a knife is not inherently deadly].) Defendant contends the error was prejudicial as to Kaytlyn (count 2).[2] We agree.

In *Aledamat*, *supra*, 8 Cal.5th 1, the defendant assaulted the victim with a deadly weapon by thrusting a box cutter at the victim from a few feet away while saying, "'I'll kill you.'" (*Id.* at p. 4.) The box cutter was not an inherently deadly weapon, yet the trial court instructed the jury with CALCRIM No. 875's language about inherently deadly weapons. (*Ibid*.)

Our Supreme Court held the trial court erred in doing so, but held that the error was harmless beyond a reasonable doubt for several reasons. (*Aledamat*, *supra*, 8 Cal.5th at p. 6.) First, the *Aledamat* court noted that CALCRIM No. 875 juxtaposed "'inherently deadly'" with "'used in such a way that it is capable of causing [injury] and likely to cause death or . . . great bodily injury,' and therefore 'at least indicate[d] what the "inherently deadly" language was driving at.'" (*Id.* at pp. 13-14.)

Our Supreme Court also determined that "the jury necessarily found the following: (1) defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) defendant was aware of facts that would lead a reasonable person to realize that his act by its nature

---

[2] At oral argument, defendant's counsel confirmed that he agreed that the error was harmless beyond a reasonable doubt as to Philip (count 4).

12

would directly and probably result in the application of force to someone; and (3) defendant had the present ability to apply force with a deadly weapon to a person." (*Aledamat*, *supra*, 8 Cal.5th at p. 15.)  The *Aledamat* court concluded that " '[n]o reasonable jury that made all of these findings could have failed to find' that defendant used the box cutter in a way that is capable of causing or likely to cause death or great bodily injury." (*Ibid.*, citing *People v. Merritt* (2017) 2 Cal.5th 819, 832.)

The *Aledamat* court also considered a jury instruction, which was not given here, that directed the jury to "'consider all of the surrounding circumstances including when and where the object was possessed and any other evidence that indicates whether the object would be used for a dangerous rather than a harmless purpose.'" (*Aledamat*, *supra*, 8 Cal.5th at p. 14.)  Given this instruction, our Supreme Court found that it was unlikely the jury improperly relied on the "inherently deadly" language of CALCRIM No. 875.  (*Ibid.*)  The court reasoned that the jury would have understood the box cutter the *Aledamat* defendant used to be deadly "in the colloquial sense of the term—i.e., readily capable of inflicting deadly harm—and [found that] defendant used it as a weapon." (*Id.* at p. 15.)

Next, the *Aledamat* court observed that in closing argument "no one ever suggested to the jury that there were two separate ways it could decide whether the box cutter was a deadly weapon.  Defense counsel argued that defendant did not use the box cutter in a way that would probably result in the application of force, that is, that defendant did not assault the victim at all—an argument the jury necessarily rejected

13

when it found defendant guilty of that crime. But counsel never argued that, if he did assault the victim with the box cutter, the box cutter was not a deadly weapon." (*Aledamat*, *supra*, 8 Cal.5th at p. 14.)

Similarly, the prosecutor here never *explicitly* argued the object defendant used was an inherently deadly weapon or that there were "two separate ways [the jury] could decide whether the [object] was a deadly weapon." (*Aledamat*, *supra*, 8 Cal.5th at p. 14.) But the prosecutor argued at least three times in his closing argument that defendant assaulted Kaytlyn with a deadly weapon simply because he ran at her with a knife. In other words, the prosecutor implicitly argued that the weapon defendant used was inherently deadly.

The prosecutor first stated that defendant came "toward her with a knife," and argued "[t]hat's assault with a deadly weapon." The prosecutor again argued that defendant was guilty of the offense simply because he charged Kaytlyn while holding a knife: "[Defendant's] not charged with actually inflicting injury on Kaytlyn. That's not what assault is. Assault is you have a weapon. You use that weapon in a way where you could apply force to a person. *It's a deadly weapon*. And you have the intent to actually use the weapon. [Kaytlyn] was in a position where she could have been injured. That's assault, assault with a deadly weapon." (Emphasis added.)

In his rebuttal, the prosecutor argued defendant was guilty of assault with a deadly weapon, not the lesser included offense of misdemeanor assault as defendant urged, because he assaulted Kaytlyn while holding a weapon: "A lesser of misdemeanor assault

14

would mean that there was no deadly weapon. So it would be like a lettuce and tomato sandwich. So the lesser offense would be like a lettuce, tomato sandwich, but we're saying there was bacon. There was bacon in this case. There was a stabbing weapon. And if there was a stabbing weapon, then it's a BLT and it's an assault with a deadly weapon because that's the only difference."

Because the prosecutor erroneously told the jurors three times that defendant necessarily was guilty of assault with a deadly weapon if they found that he assaulted Kaytlyn while holding a "stabbing weapon," it is possible the jurors found defendant guilty of the offense irrespective of how he used the weapon. Unlike the *Aledamat* jury, the jury here was not instructed to "'consider all of the surrounding circumstances'" concerning how defendant used the weapon. (*Aledamat*, *supra*, 8 Cal.5th at p. 14.) In the absence of that instruction, the jury may have relied on the prosecutor's erroneous argument to improperly find that the weapon defendant held while charging Kaytlyn was inherently deadly, and incorrectly based its verdict on that finding. Put another way, it is plausible that the jury credited the prosecutor's multiple suggestions that the presence of the "stabbing weapon" during an assault is sufficient, without more, to find that the assault was committed with a deadly weapon. As a result, we cannot say that the instructional error was harmless beyond a reasonable doubt. (See *Aledamat*, *supra*, 8 Cal.5th at p. 14 [instructional error was harmless beyond a reasonable doubt in part because "no one ever suggested to the jury that there were two separate ways it could

15

decide whether the box cutter was a deadly weapon"].)  We therefore reverse defendant's conviction on count 2.

C.   *There Was Insufficient Evidence that Defendant Threatened Kaytlyn*

Defendant contends there is insufficient evidence that he criminally threatened Kaytlyn because (1) she did not hear defendant yell anything threatening and (2) she was not in sustained fear as a result of anything he said.  We agree.

To convict defendant of making a criminal threat in violation of section 442, the People had to prove, among other things, that (1) the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," and (2) "that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety.'"  (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

Kaytlyn unequivocally testified that she did not remember defendant "saying anything."  When defense counsel asked if she could remember what defendant said, Kaytlyn responded, "No."  Kaytlyn also testified that she was not scared until she saw Phillip "bleeding as much as he was and where he was bleeding from."  To confirm Kaytlyn's testimony, defense counsel asked if she was "scared based on anything that [defendant] was saying to [her]."  Kaytlyn answered, "I can't even remember things that

16

he said, so--." Defense counsel then asked Kaytlyn if the "only reason" she was scared was because she saw Phillip's injuries." Kaytlyn replied, "Yeah. I felt a little scared after I got pushed, but that's because it caught me off guard I guess."

Kaytlyn's testimony thus unambiguously shows defendant did not say anything that she considered threatening and she was not afraid because of anything he said. As a result, we conclude there was insufficient evidence that defendant criminally threatened Kaytlyn in violation of section 442. (See *People v. Toledo*, *supra*, 26 Cal.4th at pp. 227-228 [conviction for criminal threat under section 442 requires evidence that victim was in fear because of something the defendant communicated to victim].) Accordingly, we reverse defendant's conviction on count 4.

D. *Section 654*

At sentencing, defendant argued that the sentences for his convictions for making criminal threats (counts 3 and 4) should be stayed under section 654. The trial court disagreed, reasoning that "you could have an assault with a deadly weapon with the defendant—a defendant saying nothing and I think that the—the criminal threats is a separate statute so I think it would—it's an issue of whether it would be concurrent or consecutive, not [section] 654." The trial court therefore ordered defendant's sentences on counts 3 and 4 to run concurrently with his sentence on count 1.

17

Defendant contends the trial court erred in doing so.  We disagree.[3]

    1.  *Applicable Law and Standard of Review*

Section 654, subdivision (a) provides in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct.  [Citation.]"  (*People v. Hester* (2000) 22 Cal.4th 290, 294.)  "'"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may [not] be punished . . . for more than one.'"'"  [Citation.]"  (*People v. Jackson* (2016) 1 Cal.5th 269, 354.)  "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'  [Citation.]"  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

---

[3] Because we reverse defendant's conviction on count 4, we need only address whether the trial court should have stayed defendant's sentence on count 3 under section 654.

18

We review a trial court's ruling on whether section 654 applies for substantial evidence. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368, disapproved on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.)

   2. *Analysis*

We conclude substantial evidence supports the trial court's implied finding that defendant acted with separate objectives when he assaulted and threatened the victims. (See *People v. Brents* (2012) 53 Cal.4th 599, 618 ["A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence."].)

*Raymundo M.*, *supra*, 52 Cal.App.5th 78 is again directly on point. There, the court held that the trial court "could reasonably have found that [the juvenile] committed the assault with the objective of inflicting *physical* harm on [the victim], whereas [the juvenile] criminally threatened [the victim] with the separate objective of inflicting *mental or emotional* harm." (*Raymundo M.*, *supra*, 52 Cal.App.5th at p. 95.) As the *Raymundo M.* court observed, "[c]ourts routinely recognize similar distinctions." (*Ibid.* [collecting cases holding section 654 did not apply when the defendant orally threatened the victim and then committed a separate, physically threatening offense like assault].)

Like the *Raymundo M.* court, we conclude that defendant's "assault and criminal-threat counts arose from separate conduct that the [trial] court could reasonably have concluded were undertaken pursuant to separate objectives." (*Raymundo M.*, *supra*, 52 Cal.App.5th at p. 95.) As in *Raymundo M.*, the trial court could have reasonably found

19

that defendant threatened Phillip with the intent to cause him emotional or mental harm and assaulted him and Kaytlyn with the intent to cause them physical harm. (*Ibid.*) In other words, the trial court could have reasonably found that defendant's objectives in threatening and assaulting Phillip were independent of, and not merely incidental to, each other. (See *People v. Brents*, *supra*, 53 Cal.4th at p. 618.) We therefore conclude the trial court did not err by declining to stay defendant's sentence for his threat offense against Phillip (count 3) under section 654.

IV.

DISPOSITION

The judgment is reversed as to defendant's convictions on counts 2 and 4, but affirmed in all other respects. The matter is remanded for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


McKINSTER
   Acting P. J.


MENETREZ
   J.

20